UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

DON LEON MOORE,                                              Case No. 04-13875-MAM-7

Debtor.

**ORDER DENYING FIRST BANK OF LINDEN'S MOTION FOR
TURNOVER AND GRANTING THE TRUSTEE'S MOTION TO
BIFURCATE CLAIM FOR ATTORNEY'S FEES**

Robert Reynolds, Attorney for First Bank of Linden
Jeffery Hartley, Attorney for Chapter 7 Trustee
Kristopher Sodergren, Attorney for First United Security Bank

This matter is before the Court on First Bank of Linden's motion for turnover of remaining sales proceeds and rents from commercial real estate. The Chapter 7 Trustee and First United Security Bank objected to First Bank's motion. Additionally, the Trustee filed a motion to bifurcate claim for attorney's fees. The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is denying the motion for turnover and is granting the motion to bifurcate.

**FACTS**

On February 25, 2000, First Bank of Linden loaned $60,000.00 to Don and Gladys Moore d/b/a Young Impressions. The loan was evidenced by a note and secured by a mortgage on real property owned by the Moores. Subsequently, the Moores defaulted under the terms of the note and mortgage and First Bank filed a complaint against the Moores in Marengo County, Alabama. The Moores failed to respond to the complaint, and on May 13, 2004, the Circuit Court of

Marengo County entered a default judgment against them for $69,272.60. That judgment was comprised of the outstanding loan amount, plus interest due ($60,113.60), court costs ($159.00) and attorney's fees ($9,000.00). The attorney's fee portion of the judgment is equal to fifteen percent (15%) of the outstanding loan amount.

On July 6, 2004, Don Moore filed a petition for relief under Chapter 7 of the Bankruptcy Code. On August 9, 2004, First Bank filed a proof of claim against the estate of the debtor totaling $74,760.13 ($14,760.13 of that claim was listed as unsecured). On September 22, 2004, First Bank amended its claim to make the entire $74,760.13 secured. On November 15, 2004, this Court entered a consent order authorizing the Trustee to sell the real property for $80,000.00, distributing $67,500.00 to First Bank and $7,500.00 to the Trustee to cover fees and expenses of the sale. The remaining $5,000.00 from the sale (less the taxes to be paid as per the consent order) as well as $2,000.00 in rental income received prior to the sale are being held by the Trustee pending this Court's determination of the proper recipient(s). First Bank contends it is entitled to the remaining real estate sale proceeds and all the rents from the property. The Trustee and First United Security Bank assert that the $67,500.00 already paid to First Bank satisfied First Bank's secured claim in full, and argue the money now being held by the Trustee should be for the benefit of the debtor's unsecured creditors.

It is undisputed that First Bank is a secured creditor for the amount loaned to the Moores ($60,000.00), plus interest at 9% per annum, as set out in the mortgage and promissory note. The dispute arises over the issue of attorney's fees. First Bank contends that it is entitled to attorney's fees under the "plain language" of the mortgage agreement. Furthermore, First Bank argues that the Marengo County Circuit Court has already awarded it $9,000.00 in attorney's fees, and it contends the Rooker-Feldman doctrine bars this Court from reconsidering the state court's

determination of the fees. First United argues that First Bank is not entitled to any attorney's fees under the mortgage agreement. Alternatively, the Trustee and First United assert that the attorney's fee award was unreasonable and only the reasonable portion of the fees should be secured, with any unreasonable portion treated as unsecured.

## LAW

It is well established in bankruptcy proceedings that the validity and construction of a clause in a note or mortgage providing for attorney's fees is a matter of state law. *Security Mortgage Company v. Powers*, 278 U.S. 149 (1928); *In re Banks*, 31 B.R. 173 (Bankr. N.D. Ala 1982). The mortgage granted to First Bank by the Moores states:

> "KNOW ALL MEN BY THESE PRESENTS, That, in order to secure the prompt payment of our promissory note of even date herewith, payable to the order of the First Bank of Linden, Linden, Alabama, a corporation, as follows: sixty thousand and 00/100 ($60,000.00) Dollars, together with interest from date according to the terms set out in the promissory note of even date herewith and payable according to the term set therein or any renewal or extension thereof, except that the final payment of principal and interest, if not sooner paid shall be due and payable on February 15, 2014[,] *as well as to further secure the prompt payment of the other debts and demands hereinafter mentioned . . .*" (emphasis added).

The only mention of attorney's fees in the mortgage is in the habendum clause at the bottom of the instrument, which states in pertinent part:

> "5. That, if any of the indebtedness secured by this mortgage be not paid in full when due, said mortgagee, its successors or assigns, may take immediate possession of said property, and, with or without having the same in their possession, sell and convey the same, at public or private sale, at their option, and apply the proceeds of sale, first to payment of cost, charges of caring for, handling, advertising and selling same, *including reasonable attorney's fee*..." (emphasis added).

The Court finds that under the language of the mortgage, a reasonable attorney's fee would only be allowed if there was a foreclosure sale. *See In re Banks*, 31 B.R. at 176. Because First Bank never foreclosed on the property, the attorney's fees claimed are not allowed under the

mortgage. However, the case of *Taylor v. Jones*, 276 So.2d 130, *cert. denied*, 414 U.S. 879 (1973), allowed the recovery of reasonable attorney's fees where the language in the note so authorized, even though the language of the mortgage did not permit a recovery. The note at issue states that "you [the Moores] agree to pay all costs we [First Bank] incur in collecting this Note after default including reasonable attorney's fees not exceeding 15% of the amount due."

The Alabama Code governs the allowance of attorney's fees in contracts for consumer credit transactions, such as the agreement entered into between debtors and First Bank. *See* Ala. Code § 5-19-10 (1975). The language in the note at issue meets the conditions of section 5-19-10. Therefore, the language in the note authorizes the recovery of reasonable attorney's fees under Alabama law.

Having decided that the mortgage and note allow First Bank to recovery reasonable attorney's fees, the Court now turns to the issue of reasonableness. First Bank argues that because the state court judgment awarding $9,000 in attorney fees is a final judgment, this Court is barred by the Rooker-Feldman doctrine from reexamining the fees for reasonableness. The Court disagrees.

The Rooker-Feldman doctrine precludes lower federal courts from reviewing state court decisions. *Powell v. Powell*, 80 F.3d 464, 466 (11th Cir. 1996). Accordingly, Rooker-Feldman precludes a federal action if the relief requested would effectively reverse the state court decision or void its ruling. *See Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997). Moreover, "the doctrine applies not only to claims actually raised, but also to claims that were not raised in the state court but are 'inextricably intertwined' with the state court's judgment." *Powell*, 80 F.3d at 466 (*citing District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

However, there are some exceptions to the Rooker-Feldman doctrine. The Eleventh Circuit has recognized a limitation to the doctrine when the plaintiff has no "reasonable opportunity to raise his federal claim in state proceedings." *See Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983); *see also Biddulph v. Mortham*, 89 F.3d 1491, 1495, n.1 (11th Cir. 1996). In such an instance, the federal claim is not considered to be "inextricably intertwined" with the state court's judgment. *Id.* Furthermore, the United States Supreme Court has held the Rooker-Feldman doctrine precludes federal review only when the state court judgment is challenged by a party to the state court action. *Johnson v. De Grandy*, 512 U.S. 997, 1005 (1994); *see also Dionne v. Colvin (In re Moore)*, 312 B.R. 902, 906 n.1 (Bankr. N.D. Ala. 2004). Avoiding the issue of whether the debtor had a reasonable opportunity to raise the reasonableness issue in the state court proceeding, the Court holds that the Rooker-Feldman doctrine does not bar the Court's review of the reasonableness of the attorney's fees awarded because neither the Trustee or First United Security were parties to the state court proceeding.

Section 506(b) of the Bankruptcy Code provides that an oversecured creditor is entitled to reasonable attorney's fees as part of its allowed secured claim if the underlying contract provides for such fees. 11 U.S.C. § 506(b). It is undisputed that First Bank is an oversecured creditor, and as discussed above, the attorney's fees were provided for in the note. Additionally, the state court judgment awarding $9,000 in attorney's fees is enforceable against the debtor's estate. However, § 506(b) does not exempt an attorney's fee arrangement from the reasonableness standard just because it is enforceable under state law; the reasonableness standard applies to all contractually set attorney's fees. *Welzel v. Advocate Realty investments, LLC (In re Welzel)*, 275 F.3d 1308, 1315 (11th Cir. 2001). "Enforceability and reasonableness are not the same thing--a fee is not necessarily reasonable just because it is enforceable." *Id.* Therefore, even though the

state court judgment awarding the attorney's fees to First Bank is enforceable under state law, it does not follow that the fees are per se reasonable under the Bankruptcy Code. *Id.* Although First Bank's entire claim for the contractually set, state court ordered fees is enforceable under state law and allowed under § 502, the attorney's fees must be still be assessed for reasonableness under § 506(b). *Id.* at 1316. The reasonable attorney's fees will be treated as a secured claim, with any portion deemed unreasonable to be treated as an unsecured claim. *Id.* at 1318.

In determining reasonable attorney's fees within the Eleventh Circuit, the judge must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the twelve factors laid out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)[1]. *Crownover v. Manufacturers Hanover Commercial Corp. (In re Central Foundry Co.)*, 45 B.R. 395, 399 (Bankr. N.D. Ala. 1984) *(citing Neville v. Eufaula Bank & Trust Co. (Matter of U.S. Golf Corp.)*, 639 F.2d 1197, 1201(5th Cir. 1981)). In the bankruptcy context, the judge must also consider whether the bankruptcy assets were administered as economically as possible and whether any of the services rendered were duplicative or non-legal. *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (*citing Matter of U.S. Golf Corp.*, 639 F.2d at 1201). Furthermore, an attorney "may not be compensated at a rate applicable to legal work for tasks which properly could have been performed by less costly non-legal employees." *Matter of U.S. Golf Corp.*, 639 F.2d at

---

[1] The twelve factors set out in Johnson are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

1202.

First, the judge must determine the nature and extent of services rendered by the attorney. *Id.* For the judge to accomplish this, the attorney seeking the fees should file a specific written statement and description of his hours worked. *Id.* If there are any disputed factual issues concerning this statement, the Court must hold an evidentiary hearing. *Id.* Second, the judge must determine the value of the attorney's services. *Id.* Finally, the judge must explain the basis of her award by briefly describing her findings of fact and explaining how her analysis of the factors led to her decision. *Id.* Significantly, the judge must indicate how each of the twelve *Johnson* factors affected her decision. *Id.* "The burden is on the attorney claiming a fee in a bankruptcy proceeding to establish the value of his services." *Brake v. Tavorima (In re Beverly Mfg. Corp.)*, 841 F.2d 365 (11th Cir. 1988) (*quoting Matter of U.S. Golf Corp.*, 639 F.2d at 1207).

In light of the requirements enumerated above, the Court will require First Bank's attorney(s), to file a specific written statement and description of hours worked in relation to this claim. Once that statement is filed, the Court will have an evidentiary hearing if there is any factual dispute regarding the statement. After the statement is received and after any necessary hearings, the Court will determine the reasonable value of the attorney's services by analyzing the *Johnson* factors as required. First Bank's attorney(s) will have the burden to establish his reasonable fees. As previously mentioned, those fees determined to be reasonable will be treated as secured claims, while any fees determined to be unreasonable will be treated as unsecured.

The last issue before the Court concerns the rent proceeds currently being held by the Trustee. Section 522 of the Bankruptcy Code governs the post-petition effect of a security interest. 11 U.S.C. § 522. Generally, property acquired after the filing of the case will not be

subject to a lien from a security agreement that existed prior to the bankruptcy filing. *Id.* at § 522(a). However, § 522(b) provides an exception to general rule. *Id.* at § 522(b). In 1994 Congress amended § 522(b), subdividing the section into subsections (b)(1) and (b)(2). Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, 108 Stat. 4106 (codified as amended 11 U.S.C. § 552 (1994)). Under § 522(b)(2), if the debtor entered into a security agreement prepetition and the security agreement extended to the debtor's prepetition property and to rents of that property, then the security interest extends to postpetition rents on the property, to the extent rents were provided for in the security agreement. *Id.* at § 522(b)(2). The legislative history of § 522(b)(2) suggests it was "intended to obviate the need to comply with additional requirements imposed by state law." *In re Resort Inns, Inc.*, 2004 Bankr. LEXIS 1580 (Bankr. S.D. Ga. August 30, 2004) (*quoting In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997).

Prior to the amendment, § 522(b) specifically stated that the creditor's rights were dependent on "applicable nonbankruptcy law." Accordingly, the courts would examine state law to determine if a pre-petition security interest extended to post-petition rental income. *See Condor One, Inc. v. Turtle Creek, LTD. (Matter of Turtle Creek, LTD.)*, 194 B.R. 267 (Bankr. N.D. Ala. 1996). However, subsection (b)(2) omitted any reference to applicable nonbankruptcy law. Thus, if a creditor holds a valid pre-petition security agreement which extends to rents, it will also extend to post-petition rents. *In re Resort Inns, Inc.*, 2004 Bankr. LEXIS at *11; *In re Wrecclesham Grange, Inc.*, 221 B.R. at 981.

Accordingly, if First Bank's security agreement with the Moores extended to prepetition rents on the property, the agreement will also extend to the post-petition rents. The word "rent" does not appear anywhere in the language of the mortgage or the note. The note does state that in

the event of default the Bank has the right to take possession of the collateral and receive any "proceeds, dividends or income" on the collateral. The Court finds this language insufficient to entitle First Bank to the rents collected. Because the security agreement did not extend to prepetition rents, First Bank is not entitled to the postpetition rents. The rents now held by the Trustee are held for the benefit of the unsecured creditors.

    THEREFORE IT IS ORDERED that the motion by First Bank of Linden for turnover of remaining sales proceeds and rents from commercial real estate is DENIED. It is further ORDERED that First Bank of Linden's attorney(s) claiming fees incurred in relation to its claim in debtor's bankruptcy must file a specific written statement and description of hours worked, so that the Court may determine the reasonable attorney's fees to be treated as secured, and what portion of the fee award, if any, shall be treated as unsecured.

Dated:   February 10, 2005

*/s/ Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE